# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MICHAEL VERNSEY,

                                             Plaintiff,

          v.                                                    9:20-CV-992
                                                                (DNH/ATB)
DIANE TOURON and KIM RICHARDS,

                                             Defendants.

MICHAEL VERNSEY, Plaintiff, pro se
ANNE M. HURLEY, ESQ., for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In the portions of his civil rights complaint which survived the court's initial review pursuant to 28 U.S.C. §§ 1915 and 1915A, plaintiff asserts Fourteenth Amendment medical indifference claims against defendants Diane Touron and Kim Richards.  (Complaint ("Compl.")) (Dkt. No. 1).  Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 51).  Plaintiff responded in opposition to the motion (Dkt. Nos. 79, 80, 81, 82), and defendants filed a reply (Dkt. No. 83).  Plaintiff filed a sur-reply on January 25, 2023 (Dkt. No. 86), at which time the court advised that no further submissions would be considered with respect to defendants' motion for summary judgment (Dkt. No. 87).[1]

---

[1] Accordingly, plaintiff's subsequent submissions were stricken from the docket as they were not authorized by the court.  (Dkt. Nos. 88, 89).

## I.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II.    **Facts**

The following is a summary of the relevant facts as stated in the complaint and its exhibits.  To the extent that additional facts were developed through discovery, and included in the summary judgment motion, I will discuss them during my analysis of the pending claims.

From April 2019 through March 2020, plaintiff was confined to the St. Lawrence County Jail ("SLCJ") as a pretrial detainee.  (Compl. at 4).  Throughout plaintiff's incarceration at SLCJ, he was "denied access to adaquit [sic] mental health services." (*Id.*).  Specifically, plaintiff alleges that between April and September 2019, he submitted seven requests to speak with a mental health professional through an online portal at SLCJ.  (Compl. at 4; Dkt. No. 1-2 at 1-7).  These requests for medical attention "went un-answered, or [were] denied, or closed" without any official speaking to him in person.  (Compl. at 4).

After "months" of requests for services made through the SLCJ online portal and with corrections officials, plaintiff was "finally . . . seen" by defendant Licensed Mental Health Counselor ("LMHC") Diane Touron on September 23, 2019.  (Compl. at 4; Dkt. No 1-1 at 5).  Plaintiff alleges that he was "lied to and told" that he "needed to seek a doctor's diagnosis[,] however SLCJ "didn't have a provider."  (Compl. at 4).  Plaintiff was also told that it "cost to[o] much to send people out to an outside agency."  (*Id.*). Plaintiff "asked for regular counseling [through LMHC Touron], which was denied." (*Id.*).  He was advised that "case loads were to[o] big[.]" (*Id.*).

Approximately seven months after plaintiff first requested mental health services,

he was seen by defendant Nurse Practitioner ("NP") Kim Richards.  (Compl. at 4).  NP Richards initially prescribed plaintiff with "medication that she used universally" to treat different problems.  (Compl. at 4; Dkt. No. 1-2 at 16, 18).  As a result of plaintiff not receiving adequate mental health treatment during his confinement at SLCJ, he suffered "multiple attacks," "months of sleepless nights," and "thoughts of self harm[.]" (Compl. at 4).

## DISCUSSION

### III.    Deliberate Medical Indifference

####     A.    Legal Standard

Plaintiff's claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d. Cir. 2017) (citation omitted). The Supreme Court has distinguished between Eighth and Fourteenth Amendment excessive force claims, holding that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015).  In *Darnell*, the Second Circuit extended the *Kingsley* standard to a pretrial detainee's allegations related to unconstitutional conditions of confinement.  *See Darnell*, 849 F.3d at 35. District courts in this circuit have since further applied the *Kingsley* standard to claims of deliberate indifference to serious medical needs brought under the Fourteenth Amendment.  See *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *19 (E.D.N.Y. Aug. 22, 2017) ("District Courts in this circuit have applied *Kingsley* to

claims for deliberate indifference to medical needs"); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. March 31, 2017) ("The reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment"); *Torrez v. Semple*, No. 17-CV-1211, 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("[F]or a claim of deliberate indifference to mental health needs or unconstitutional conditions of confinement under the Fourteenth Amendment, a pretrial detainee can satisfy the subjective element by showing that the defendants 'knew, or should have known, that the condition posed an excessive risk to health or safety' ").

"[D]eliberate indifference to serious medical needs . . . constitutes the 'unnecessary and wanton infliction of pain,' . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citation omitted). In order to state a claim based on constitutionally inadequate medical treatment, a plaintiff must satisfy a two-prong test. *Darnell,* 849 F.3d at 29. The first element is objective and "considers whether the alleged deprivation of adequate medical care [was] sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263,

279 (2d Cir. 2006))(quotation marks omitted).[2] The second, 'mental' element[3] ensures that the defendant acted with at least deliberate indifference to the challenged conditions. *See Darnell*, 849 F.3d at 29; *see also Bell v. Carson*, No. 9:18-CV-783 (MAD/ATB), 2018 WL 5993686, at *2 (N.D.N.Y. Nov. 15, 2018).

### 1.    Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin*, 467 F.3d at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates' health risk will not be found liable because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in

---

[2]Although the Supreme Court, in *Kingsley*, altered the standard for deliberate indifference claims, the objective prong remains the same whether analyzed under the Eighth or Fourteenth Amendments. *Figueroa v. Cty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *4 (S.D.N.Y. July 5, 2018).

[3]In *Darnell*, the Second Circuit cautioned that this element, commonly referred to as the "subjective prong," was better classified as a "*mens rea* prong" or "mental element prong." The Court reasoned that the term "subjective prong" might be a misleading description because "the Supreme Court has instructed that "deliberate indifference roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell*, 849 F.3d at 29 (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). After the Second Circuit concluded that deliberate indifference should be defined objectively for a claim of a due process violation, other courts in this circuit have adopted the phrase "mental element prong" to more appropriately describe the relevant standard. *See Durham v. Jones*, No. 9:17-CV-434 (LEK/DJS), 2019 WL 1103284, at *4 (N.D.N.Y. Jan. 23, 2019); *Richardson v. Corr. Medical Care, Inc.,* No. 9:17-CV-0420 (MAD/TWD), 2018 WL 1580316, at *5-6 (N.D.N.Y. Mar. 28, 2018).

the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

## 2.    Mental Element

Under the second prong of the deliberate indifference analysis, the court must consider whether defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [plaintiff] even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "As a consequence, the relevant *mens rea* is recklessness, which, for present purposes, 'more closely resembles recklessness as the term is used in the civil context' and 'does not

7

require a defendant to be subjectively aware of the harm resulting from his acts or omissions.'" *Singletary v. Russo,* No. 13-CV-04727, 2019 WL 1929819, at *10 (E.D.N.Y. Feb. 22, 2019) (citing *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017)) (citations omitted). Under this standard, "a defendant possesses the requisite *mens rea* when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the [plaintiff] would occur." *Feliciano*, 2017 WL 1189747, at *13 (citing *Darnell*, 849 F.3d at 35). A showing that the defendant acted negligently is insufficient to satisfy the mens rea element. *See Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a mens rea greater than mere negligence. . . . A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.") (citations omitted).

### B.    Analysis

Plaintiff characterizes his claims against LMHC Touron and NP Richards as sounding in "neglect" and "medical malpractice" (Compl. at 4-5), which would not establish the mens rea required to establish deliberate indifference. However, the court will liberally construe plaintiff's allegations as suggesting causes of action for intentional or reckless indifference to medical needs under the Fourteenth Amendment.

Plaintiff complains that he was denied adequate mental health care for months, despite his consistent requests for counseling and other forms of treatment. The defendants, in seeking summary judgment, deny that they were deliberately indifferent to a serious medical need of the plaintiff, arguing that "plaintiff received thoughtful

good quality mental health care . . . , they were never indifferent to [plaintiff's] concerns, and [plaintiff] did not have a serious medical/mental health need." (Defendant's Memorandum of Law ("Def.'s MOL") at 2) (Dkt. No. 51-4).

In support of their motion, defendants have submitted various affidavits, medical records, and other facility documents relevant to plaintiff's claims against the mental health providers at SLCJ. It is undisputed that, upon arriving to SLCJ, plaintiff underwent a "full and complete medical and mental health examination and interview session[.]" (Statement of Material Facts ("SOMF") ¶ 5, Dkt. No. 51-5; Response to Statement of Material Facts ("RSOMF") ¶ 5, Dkt. No. 79). Plaintiff concedes that he was not receiving any mental health treatment or medication immediately prior to his arrival to SLCJ. (Affidavit of Dianne Touron ("Touron Aff.") ¶ 7, Ex. J, Dkt. No. 51-6; Affidavit of Anne Hurley, Ex. A ("Pl.'s Dep.") at 28-29, Dkt. No. 51-2).

According to defendant LMHC Diane Touron, "when a detainee arrives [to SLCJ] with no history of mental health treatment in the community, there is an established protocol for determining whether or not his request for mental health intervention is rooted in a genuine mental health condition." (Touron Aff. ¶ 3). Specifically, in assessing a detainee's need for care, she will "review all shift log entries of corrections officers' observations of each detainees' activities on a daily basis." (*Id.*). If any entry "causes concern of a mental health issue for any detainee," LMHC Touron will "launch a follow up investigation with corrections staff and the detainee." (*Id.*). Where a corrections officer reports that an inmate is "withdrawn, not interacting, [exhibiting] a change in eating habits, abandons his personal hygiene routine, has no

9

communications with contacts on the outside, [or] stops attending jail programs . . . the mental health unit will intervene and assess." (*Id.* ¶ 4).

In LMHC Touron's experience, "many detainees seeking mental health services in jail are actually looking to qualify for special benefits[.]" (*Id.* ¶ 2). New arrivals at SLCJ who have already been diagnosed with, and received treatment in the community for mental health issues "receive priority, as required by [ ] professional standards, in order to establish some continuity of treatment while they are incarcerated." (*Id.*). Conversely, other individuals, such as plaintiff, arrive to the facility with a "longstanding drug issue[]." (*Id.*). These detainees "often display a characteristic pattern known as Post-Acute Withdrawal Syndrome" ("PAWS"). (*Id.*). LMHC Touron states that PAWS is a "part of the natural progression of addicts to incarceration and does not warrant any preferred mental health intervention. (*Id.*). She further avers that because jail "is not a happy place," claims of general unhappiness or self-diagnosed depression are not considered a significant mental health event requiring active intervention, and are "of little effect." (*Id.* ¶ 3). When an inmate self-refers, "it is the practice of the mental health unit to seek the observations and input of the corrections officers who observe and interact with this inmate on a regular basis . . . to determine if there has been a change in the detainee's activities of daily living, that would be cause for concern." (*Id.* ¶ 4).

At all relevant times, the inmates at SLCJ communicated with the mental health staff by use of Telmate, an electronic message system which inmates accessed on ipads. (Touron Aff. ¶ 6). On April 6, 2019, plaintiff sent a message to the mental health staff,

stating that he needed to speak to someone.  (Touron Aff. ¶ 7; Dkt. No. 1-2 at CM/ECF p. 1).  LMHC Touron opened the message on April 8th and marked it as "pending." (Touron Aff. ¶ 7).

While plaintiff's request was pending, LMHC Touron "made inquiry of the staff and corrections officers at the jail regarding their observation of [plaintiff] and his activities of daily living."  (*Id.*).  The information she obtained confirmed that, "while [plaintiff] may have been unhappy with his circumstances, his activities of daily living were appropriate and his was not considered a mental health issue." (*Id.*).  Plaintiff was advised by LMHC Touron in response to his April 6th message, as well as "many [other] times by the corrections staff," that "mental health staff must prioritize those inmates who are on psychiatric treatment prior to incarceration, in order to maintain conformity of care."  (*Id.*).

On April 15, 2019, plaintiff asked to be placed in LMHC Touron's "mental health classes on the weekends."  ("Touron Aff ¶ 8; Dkt. No. 1-2 at CM/ECF p. 2).  The same day, LMHC Touron sent a response to plaintiff advising that she did not conduct weekend classes at the facility, and providing instruction on how to properly sign up for programming.  (*Id*).

On June 3, 2019, plaintiff sent a message to the mental health staff stating that he needed to be seen because he was "severely depressed."  (Touron Aff. ¶ 9; Dkt. No. 1-2 at CM/ECF p. 3).  LMHC Touron "opened the inquiry the following day, and confirmed with jail staff that their observations of [plaintiff's] activities of daily living were appropriate and unchanged despite his self-diagnosis of depression."  (Touron

11

Aff. ¶ 9). Plaintiff was "advised by corrections staff that he would not be seen by mental health at that time." (*Id.*).

LMHC Touron received additional requests from plaintiff to speak to mental health staff on August 20ᵗʰ, August 21ˢᵗ and August 31ˢᵗ. (Touron Aff. ¶¶ 10-12; Dkt. No. 1-2 at CM/ECF pp. 4-6). In response to each of these requests, LMHC Touron spoke with jail personnel who "confirmed that their observations of [plaintiff's] activities, appetite, hygiene, and interactions were unchanged." (Touron Aff. ¶¶ 10-12). She also noted that the shift log detailing plaintiff's activities was unremarkable. (*Id.*). Accordingly, plaintiff was advised in response to each request that he would not be seen by mental health. (*Id.*).

On September 19, 2019, plaintiff sent another message to mental health in which he asked for "help," and stated that he felt like he was going to have a "heart attack," citing symptoms of heavy breathing, loss of breath, "deep sweats" and shooting pains in his chest. (Dkt. No. 1-2 at CM/ECF p. 7). Plaintiff stated that he could not "stop thinking," and "couldn't read." (*Id.*). According to LMHC Touron, "jail personnel confirmed that [plaintiff's] activities and interactions were inconsistent with a mental health event and inconsistent with a heart attack[.]" (Touron Aff. ¶ 13). Plaintiff was not placed on the schedule to be seen by mental health. (*Id.*).

Plaintiff sent another message on September 21, 2019, stating that he had "another attack," and pleading to be seen by mental health. (Dkt. No. 1-2 at CM/ECF p. 8). "Despite the fact that jail personnel continued to report that [plaintiff's] behavior, interactions, and activities were appropriate to his circumstances, that the daily logs

were consistent with this and despite the fact that [she] continued to believe that any issues [plaintiff] referenced were emanating from his drug withdrawal," LMHC Touron agreed to meet with plaintiff "in an abundance of caution." (Touron Aff. ¶ 14).

When LMHC Touron met with plaintiff on September 23rd, "the session confirmed what the corrections officers had advised all along . . . . [plaintiff] exhibited none of the indicators of any serious mental health issues requiring response. (*Id.*). Plaintiff sent additional requests to be seen on September 29th and October 3rd. (Dkt. No. 1-2 at CM/ECF pp. 9-10). On October 4, 2019, LMHC Touron responded that she would be meeting with plaintiff in order to complete his court ordered evaluation.[4] (*Id.* at CM/ECF p. 10).

On October 5, 2019, LMHC Touron completed a court-ordered mental health evaluation of plaintiff. (Touron Aff. ¶ 16, Ex. E). On October 12th, plaintiff submitted a request to mental health asking for "answers" and "diagnoses" relative to his self-diagnosed "panic attacks." (Dkt. No. 1-2 at CM/ECF p. 11). LMHC Touron once again followed up on plaintiff's request and verified that his level of activity and/or communications with others had not changed. (*Id.* ¶ 17).

On October 22, 2019, plaintiff sent a communication to mental health suggesting that he claimed to have "multiple personality." (Touron Aff. ¶ 18; Dkt. No. 1-2 at CM/ECF p. 12). LMHC Touron referred the inquiry to defendant psychiatric NP Kim

---

[4]Plaintiff contends that the criminal court "had to issue a court order[ed] evaluation" in order for him to be seen by mental health at SLCJ. (Dkt. No. 79 ¶ 5). Although the transcript from plaintiff's September 19, 2019 court appearance shows that plaintiff complained about his lack of mental health treatment at the facility, there is nothing in the transcript to suggest the court ordered plaintiff's evaluation because he was not receiving adequate care, as opposed to requiring the evaluation for other reasons pertinent to plaintiff's criminal case. (Dkt. No. 1-3).

Richards, who saw plaintiff and prescribed him the medication Prazosin[5] to address his "complaints of low-level anxiety."[6] (Touron Aff. ¶ 18; Declaration of Kim Richards ("Richards Aff.") ¶ 3, Dkt. No. 51-17; Dkt. No. 1-2 at CM/ECF p. 12). On November 15th, plaintiff sought more information about the Prazosin, and LMHC Touron responded to plaintiff's inquiries within a week. (Touron Aff. ¶ 20; Dkt. No. 1-2 at CM/ECF pp. 16-17). On November 20th, plaintiff advised mental health that the Prazosin, in his opinion, was not working, in response to which NP Richards increased his dosage. (Touron Aff. ¶ 21; Richards Aff. ¶ 3; Dkt. No. 1-2 at CM/ECF p. 18).

On November 25, 2019, plaintiff sent another message to mental health staff, advising his intent to discontinue the prescribed medication because it was not working. (Dkt. No. 1-2 at CM/ECF p. 19). He specifically sought a "diagnosis." (*Id.*). NP Richards responded to plaintiff's messages on December 6th and agreed to meet with plaintiff. (Touron Aff. ¶ 22; Dkt. No. 1-2 at CM/ECF p. 19). Plaintiff met with NP Richards on December 12, 2019. (Touron Aff. ¶ 23; Dkt. No. 1-2 at CM/ECF p. 23). She "told [plaintiff] that all [of his] problems are d[ue] to PAWS[.]" (*Id.*).

When plaintiff sent a follow-up message to mental health on December 15th complaining of serious "distress," NP Richards responded with a recommendation that plaintiff begin taking the prescription medication Buspar. (Touron Aff. ¶ 24; Richards Aff. ¶ 3; Dkt. No. 1-2 at CM/ECF p. 24). Plaintiff was provided with information about

---

[5]Prazosin is a low dose blood pressure medication which can be used to relieve anxiety. (Touron Aff. ¶ 18; Richards Aff. ¶ 3).

[6]It appears that plaintiff sent follow-up requests on October 31st, November 4th, and November 7th before he was seen by NP Richards sometime in November 2019. (Touron Aff. ¶ 19; Richards Aff. ¶ 3; Dkt. No. 1-2 at CM/ECF pp. 13-15).

the medication, however he ultimately declined to take the Buspar.  (Touron Aff. ¶ 24; Dkt. No. 1-2 at CM/ECF pp. 25-26).

A plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim.  *Riddick v. Maurer,* 730 F. App'x 34, 38 (2d Cir. 2018) ("Decisions concerning the necessity of . . . certain forms of treatment raise issues of medical judgment that do not constitute deliberate indifference.") (collecting cases); *Robinson v. Taylor*, No. 9:16-CV-285 (DJS), 2019 WL 1429529, at *7 (N.D.N.Y. Mar. 29, 2019) (decisions made by mental health professionals are issues of professional medical judgment which do not form a basis for a deliberate indifference claim) (collecting cases).  Because plaintiff might have preferred alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation.  *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

According to LMHC Touron, throughout this entire period of communication, the "records and reports of correction staff remained appropriate and inconsistent with any significant mental health issue, and inconsistent with [plaintiff's] self-reported distress."  (Touron Aff. ¶ 24).  Likewise, NP Richards asserts that she continued to communicate with LMHC Touron and the various corrections officers who observed plaintiff, and "who have been trained to detect genuine indications of mental illness."

(Richards Aff. ¶ 4).  At the time of plaintiff's transfer from SLCJ to state prison in March 2020, he was not receiving any mental health services, including medication, and he "exhibited no indications of serious or significant mental illness."  (Richards Aff. ¶ 4; Dkt. No. 51-3 at 1-4).

On this record, no reasonable juror could conclude that plaintiff's mental health status during his confinement at SLCJ was sufficiently serious for purposes of maintaining his deliberate indifference claim.  "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). A condition is considered serious if "a reasonable doctor or patient would find [it] important and worthy of comment," the condition "significantly affects an individual's daily activities," or if it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks omitted).  In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm.  *Charles v. Orange Cnty.*, 925 F.3d at 86 (citing *Smith v. Carpenter*, 316 F.3d at 187); *see also Bellotto v. Cnty. of Orange,* 248 F. App'x 232, 236 (2d Cir. 2007) ("actual medical consequences are 'highly relevant'") (quoting *Smith v. Carpenter*, 316 F.3d at 187).

The Second Circuit has recognized that, "[d]epending on their severity, psychiatric or psychological conditions can present serious medical needs in light of our contemporary standards. *Charles v. Orange Cnty.*, 925 F.3d at 86 (citing *Cuoco v.*

*Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)).  "In the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as 'sufficiently serious.' " *Johnson v. Cook*, No. 3:19-CV-1464, 2021 WL 2741723, at *13 (D. Conn. July 1, 2021) (quoting *Young v. Choinski*, 15 F. Supp. 3d 194, 199 (D. Conn. Sept. 16, 2014) (collecting cases).

Here, as discussed above, even when drawing all inferences in the plaintiff's favor, the defendants have established that the risk of harm, and medical consequences, that plaintiff faced as a result of the allegedly deficient treatment he received at SLCJ did not rise to the level of a constitutional violation.  It is undisputed that plaintiff did not have a mental health diagnosis for which he was actively treating in the community prior to arriving to SLCJ.

LMHC Touron's ongoing observations of plaintiff's activities of daily living while he was confined to SLCJ revealed that mental health intervention was neither appropriate nor necessary.  This conclusion is consistent with the record evidence before this court, including plaintiff's own testimony, indicating that despite plaintiff's self-referral for services, his attendance at programs was consistent; his interactions, appetite and hygiene were normal; he communicated regularly with family and friends; and that the corrections officers who observed plaintiff daily had no basis to believe that plaintiff was suffering from a significant mental health issue.  (Touron Aff. Ex. C at 39-50, 55, 64, 71).  These assertions are also consistent with the shift log entries submitted by the defendants, evidencing plaintiff's regular involvement in programming, classes, medical appointments, and recreation activities.  (Touron Aff.

Ex. B).

Although the records produced from plaintiff's participation in a program entitled "Community Feelings" evidence plaintiff's ongoing complaints about deficient mental health care at SLCJ, they do not document behavior that reflected an urgent psychological or psychiatric condition. (Touron Aff. Ex. D). In fact, these records reflect that plaintiff continued to attend the Community Feelings group program after purportedly giving up on seeking mental health care at SLCJ in early 2020 and until his transfer to state custody, during which time he reported feeling "inspired," "involved," "optimistic," "motivated for change," "serious about remaining sober," "powerful," "secure," "tranquil," and "satisfied," among other things. (*Id.* at CM/ECF pp. 1-13). Given the scope of the documentary and other evidence that contradicts plaintiff's unsupported claims of serious mental health issues, no reasonable finder of fact could conclude that his constitutional rights with respect to mental health care were violated. *See, e.g., Brooks v. Rock*, No. 9:11-CV-1171 GLS/ATB, 2014 WL 1292232, at *17 & nn.19, 20 (N.D.N.Y. Mar. 28, 2014) ("Plaintiff's conclusory claims of serious ongoing health problems . . . do not create an issue of fact in the face of the overwhelming documentary medical evidence to the contrary.") (citing, inter alia, *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[M]ere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case"), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Plaintiff's submissions in opposition to the defendants' motion fail to raise a

genuine issue of material fact sufficient to defeat summary judgment. Plaintiff argues that LMHC Touron's October 2019 mental health evaluation is evidence that plaintiff was suffering from a serious mental health condition. As a result of her examination, LMHC Touron stated that plaintiff's "resulting diagnostic impressions" included "Polysubstance Dependence, Unspecified Anxiety Disorder and Antisocial Personality Disorder." (Touron Aff. Ex. E). However, evidence that plaintiff suffered from diagnosable mental health conditions while confined to SLCJ is not, in itself, dispositive. The question for purposes of deliberate indifference "is what is the particular risk of harm faced by plaintiff due to the claimed deprivation of care." *R.T. v. Gross*, 298 F. Supp. 2d 289, 295 (N.D.N.Y. 2003).

   In addition to her diagnoses, LMHC Touron noted plaintiff's rather unremarkable mental examination, including his logical, organized, and goal-directed thought processes; the absence of any behavior suggestive of psychotic symptoms; plaintiff's fair insight and judgment; and his denial of homicidal, suicidal, or self-injurious thoughts. (Touron Aff. Ex. E). She did not indicate that any mental health treatment was warranted in plaintiff's case, or suggest that his conditions were at risk of producing "death, degeneration, or extreme pain." (*Id.*). Thus, because this evidence does not suggest that plaintiff faced a serious risk of harm due to his alleged lack of treatment for the conditions diagnosed by LMHC Touron, it does not serve to overcome summary judgment. *See Smith*, 316 F.3d at 186 (It is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for

Eighth Amendment purposes.").

Nor is plaintiff's trajectory of care once he was transferred to state custody proof that his condition was sufficiently serious.  In his opposition to the defendants' motion, plaintiff submitted over 200 pages of medical records purportedly generated after plaintiff was transferred into state custody in March 2020. (Dkt. Nos. 80-2; 80-3). Plaintiff avers that it is very clear that "once [he] got out of [SLCJ] and felt like [he] wanted to open up again to mental health[,]" he was seen by "licensed professionals" who diagnosed him with "anxiety, PTSD, Complex PTSD, Mood Disorder, Cyclothymic Disorder, [and] Polysubstance Dependence[.]" (Dkt. No. 81-3 at CM/ECF p. 9).

However, plaintiff's medical records do not indicate that any alleged deficiencies in care at SLCJ contributed to a subsequent deterioration of his mental health condition. In fact, while in state custody it appears plaintiff was not screened for mental health services until January 13, 2021.  (Dkt. No. 80-2 at CM/ECF p. 72-74).  Based on this initial evaluation, it was determined that plaintiff had "no indication for active mental health services." (*Id.* at CM/ECF p. 74).  Although plaintiff eventually did qualify for and was admitted to mental health services while in state custody, he has not submitted any evidence suggesting that the purported inadequacies and/or delay in treating his conditions at SLCJ adversely affected his prognosis.  *See R.T. v. Gross*, 298 F. Supp. 2d at 296-97 (citing *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002) ("An inmate who complains that delay in medical treatment rose to a constitutional

violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.")).  Instead, these records generally indicate that plaintiff commenced mental health treatment almost a year after his transfer out of SLCJ, without any significant mental health events in the interim.  Certainly, there are situations where a psychological or psychiatric condition can pose a risk of serious harm for purposes of a Fourteenth Amendment deliberate indifference claim.  In this instance, however, there is no evidence that the purported failure to treat plaintiff's conditions posed a danger to him, or was otherwise likely to result in serious harm.

Plaintiff's self-reports of significant panic attacks and other symptoms warranting, in his opinion, serious medical intervention are belied by the defendants' submissions establishing that plaintiff's symptoms were attributable to PAWS, which did not necessitate any overt mental health response.  Moreover, the records submitted by defendants establish that plaintiff's activities of daily living were minimally affected by his mental health.  Since plaintiff has failed to raise a genuine dispute of material fact which could lead a rational trier of fact to find that his mental health conditions were "life-threatening," "fast-degenerating," or causing "extreme pain," summary judgment should be granted as to his deliberate indifference claim.

Because plaintiff's claim fails under the objective prong, the court need not reach the mental prong of the deliberate indifference test.  *See e.g.*, *Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010) ("[W]e need not reach the subjective prong, because Goris has failed to demonstrate that the alleged deprivation was "sufficiently serious,"

as an objective matter, to be actionable under the Eighth [or Fourteenth] Amendment.")
(modification to original).

WHEREFORE, based on the findings above, it is

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No.
51) be GRANTED, and the complaint DISMISSED IN ITS ENTIRETY AS
AGAINST DEFENDANTS DIANE TOURON AND KIM RICHARDS, and it is
further

ORDERED that copies of this Report-Recommendation and Order be served on
the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file
written objections to the foregoing report.  Such objections shall be filed with the Clerk
of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS
WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d
Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d
Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: February 8, 2023

Andrew T. Baxter
U.S. Magistrate Judge